## HIGGINSON v. LEFFLER.
### No. 7379.

District Court, E. D. New York.
Jan. 11, 1939.

Charles A. Morton, of Brooklyn,. N. Y., for plaintiff.

Dyke & Schaines, of New York City (W. R. Liberman, of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is a suit for the alleged infringement of Patent No. 1,473,546 issued to William Eiermann for Weighted Scraper granted November 6th, 1923, on an application filed April 22nd, 1919.

The Patentee, William Eiermann, who was the original plaintiff in this suit, died while the suit was pending, and it was thereafter revived and continued in the name of his Executor, the present plaintiff.

The defendant interposed an answer setting up the defenses of invalidity and non-infringement, but on the trial the defendant stipulated that if Claims 1 and 3 of the said Patent are valid, they were infringed by the weighted scrapers stipulated to have been made and sold, by the defendant, prior to the filing of the Bill of Complaint.

Notice was given to the defendant as required by Law, prior to the commencement of this suit.

The title to the Patent is in the plaintiff.

The plaintiff bases this suit upon Claims 1 and 3 of the Patent in suit. Claim 2 is not in suit, and has not been infringed by the defendant.

Exhibits 3 and 4 are physical specimens of plaintiff's weighted scraper, embodying two structures covered by Claims 1 and 3 of the Patent in suit. The end of the handle of Exhibit 3 is provided with a button or knob, whereas the handle of Exhibit 4 terminates in a "D" handle.

Exhibit 5 is a physical specimen of defendant's weighted scraper, which is almost a facsimile copy of Exhibit 3, with the only important change being the substitution of a pipe cap threaded upon defendant's handle member for the button or knob riveted to plaintiff's handle member.

In the prosecution of the application for the Patent in suit, the Claims in suit were finally rejected by the Commissioner of Patents, and upon appeal to the Court of Appeals of the District of Columbia, Application of Eiermann, 53 App.D.C. 39, 287 F. 1016, that Court reversed the decision of the Commissioner of Patents, and directed that the Patent be granted, thus strengthening the prima-facie presumption of validity of the Claims of the Patent in suit.

The utility of plaintiff's weighted scraper is conceded.

Defendant did not offer any oral testimony, but based its reliance upon certain alleged prior art patents, to establish anticipation and lack of invention, over the prior art.

From a reading of the Patent in suit, I find its objects to be as follows: To provide (1) A scraper of the weighted type, so constructed as to be particularly effective in cleaning surfaces on which there has accumulated a heavy, thick or sticky crust or coating which has been

difficult of removal by means heretofore used. (2) A weighted scraper having the weight acting directly in line with the force applied at the handle. (3) A weighted scraper having removable and interchangeable blades therefore having means for applying them to the main body of the scraper, so that the force transmitted to the scraper will not tend to shear the holding means. (4) A weighted scraper having its parts arranged so as to permit the tool to be used at any desired angle to the surface scraped, and to be reversed while in use to effect self-sharpening of the working edge of the blade.

The tool of the Patent in suit is provided with a bell-shaped weighted head or body 4 tapering into a stem 1, which is provided with a socket 2 for receiving the lower end 3 of a handle 4'. In the drawings the handle 4' is broken away and the specification states that only a portion of the handle is shown in the drawings. The lower end of the body 4 is tapered to form a flange 6, which is in allignment with the axis of the body 4, of the socket 2, and of the handle 4'. Flange 6, which extends at right angles to the line of thrust, is formed with a transverse shoulder 7, which shoulder surface has an abutment for the upper edge of the removable, interchangeable scraper blade 5, said blade being mounted upon the flange 6 (as by means of a series of bolts 8 and nuts 9 passing through the holes 10 of the flange 6). To prevent shearing or straining of the bolts 8, the blade 5 is slotted at 12, so that when the weighted scraper is in use, the shoulder 7 transmits the force applied to the handle 4' directly to the blade, and directly receives any shock imparted to the blade by any object which unduly resists the forward movement of the tool.

As stated in the specification, the tool may be held at any desired angle with reference to the surface to be scraped, although in practice it is generally used at an angle of 45 degrees or less, to said surface. The specification states that the Patentee has "provided a scraper in which the weight is positioned directly behind the scraper, so as to be in allignment with the blade and handle, so that when force is applied to the handle, the momentum of the moving weight is transmitted directly to the scraping edge". In actual use the work is always done upon the forward thrust.

The patented tool is a general utility scraper, which can be used equally well as a roofer's tool, for removing ice off sidewalks and for scraping grease off garage floors.

The weighted scraper of the Patent in suit has proved itself to be an efficient labor-saving device as a roofer's tool, and has now gone into general use for that purpose, replacing the roofer's spade, previously used, although the cost of the scraper of the Patent in suit is nearly twice that of the spade formerly used.

This difference in the original cost is met by the fact that when the blade of the roofer's spade was worn away, the spade was useless, and had to be thrown away, whereas a worn out blade of the Patent in suit could be replaced.

The blade of the Patent in suit tends to sharpen itself and is kept sharpened to the proper degree by merely turning the tool over. In roofer's work, it is necessary to avoid a tool that is too sharp, because it might dig into the felt or paper, making it necessary to resurface the entire roof.

If the bolts, which hold the blade in place, were sheared off when the tool was in use, it would be impractical, but experienced witnesses, who were called by plaintiff, testified that they had never seen an Eiermann scraper with the bolts sheared off.

Claims 1 and 3 of the Patent in suit read as follows:

"Claim 1. The herein described scraper comprising a heavy body portion having formed at its lower edge an extended flange in alignment with the axis of the body, means to attach a handle in alignment with the same axis, the body being formed opposite the upper portion of the flange with a shoulder arranged transverse to the axis, said flange being formed with a plurality of holes, a flat blade having parallel upper and lower edges, the upper edge portion being fitted against said flange and abutting squarely against said shoulder, said blade being provided with a plurality of vertical slots with which said flange holes are adapted to align, and fastening means for the blade passing through the slots and holes."

"Claim 3. A tool, comprising a handle, a heavy head carried by the handle in direct line with the force applied thereto, said head having a flange extended to produce a transverse shoulder, and a blade with means mounting it on the flange in abutment with the shoulder to receive the

thrust and prevent straining the mounting means, said blade being relatively thin for self-sharpening while in action on one side, the weight of the head giving the tool momentum in use, facilitating its functions."

The defendant offered in evidence six patents each of which it urges as a complete anticipation, which I will consider in order of issuance.

Patent 293,992 issued to George Wall for Reversible Scraper for Ships' Spars granted February 19, 1884, discloses a hand scraper for scraping ship's spars, having three edges of its blade C ground sharp, one being ground concave to scrape round spars. That patent does not disclose a heavy body portion, a shoulder transverse the axis, a flange having a plurality of holes, a flat blade having parallel upper and lower edges, or a blade which is relatively thin for self-sharpening. The patentee of the patent in suit does not mention a long handle, but it is a fact, as appears from the evidence, that a small tool with a short handle, to be held in the hand, would not be practical for use as a roofer's tool, and it is obvious that such a tool would be useless for removing ice from a sidewalk.

Even if either or both of the claims in suit of the patent in suit might read verbally upon the device of the Wall patent, there would be no anticipation, as the principle of operation of the device of that patent is not the principle of operation of the patent in suit.

Patent 296,501 issued to Hermann Albrecht, Assignor to the American Machine Company for Ice-Chipping Tool granted April 8th, 1884, discloses an ice pick in which a curved guard, handle, and serrated blade are combined. As stated in the specification, the tool is grasped by the hand, and struck forcibly downwards so as to chip off fragments of ice, of a substantially uniform size, from a large block of ice. The structure disclosed in that patent does not resemble the device covered by the claims in suit nor would it be practical for use as a roofer's tool, nor for removing ice from a sidewalk, therefore, it seems to me that further consideration is unnecessary.

Patent 336,429 issued to Robert E. Poindexter for Handle for Tobacco-Knives granted February 16th, 1886, discloses a tobacco knife having a sharp blade for splitting the stalks of tobacco plants. The patentee describes his invention in the specification as follows: "My said invention consists in an improved construction of handles for tobacco-knives, particularly in the formation of a clamp on the lower end of said handle, whereby the blade is more easily, rigidly, and cheaply secured thereto, and a cheaper and more efficient knife produced than those theretofore in use, * * *."

This Poindexter sought to accomplish by permanently attaching the blade A to the handle B by one or more rivets $b^2$ and $b^3$ which are "finished off". See limitations of Claims 1 and 2 of that patent to a structure for employing rivets for rigidly securing the blade to the handle. In that patent the blade is not interchangeable, and the tool is not provided with a transverse shoulder, a blade having parallel upper and lower edges, a heavy body portion nor with means to attach a handle in alignment with the body portion. The knife of that patent is a hand tool and it would not be practicable to use it in roofing work or in removing ice from sidewalks.

Patent 404,554 issued to Theron H. Palmer for Carpenter's Chisel granted June 4, 1889 discloses a carpenter's chisel or gouge which is a hand tool.

The patentee describes his invention in the specification as follows: "This invention consists in a chisel or gouge for carpenter's use which has its shank and handle portion bent out of line with its blade or cutting portion and which is provided with an anvil or hammer-block in rear of the blade to form a striking-surface when using a hammer or mallet to force the cutting-tool up to its work, instead of striking on the end of the handle direct, which is liable to split or bruise the handle."

The blade B of that patent is not in alignment with the handle A. A crooked shank C is provided to allow the use of a projection S which forms a hammer block to receive the blows from a hammer.

It would be impracticable to use the chisel of that patent for roofing work, or the removal of ice from sidewalks, therefore, further discussion of that patent seems unnecessary.

Patent 468,893 issued to Frank M. Palmiter for Chopping-Knife granted February 16, 1892, discloses a chopping knife designed to be simple, inexpensive, strong and durable, not easily choked, but readily

cleaned and which will accommodate itself to the sides of a concave chopping bowl or vessel, and consisting of a series of concentric rings 7, 7, 7 provided with bevelled cutting edges 8, 8, 8 disposed in different horizontal planes, so that the chopping-knife can be accommodated in a concave chopping bowl.

The use of that tool would be impracticable for roofing work, the removal of ice from sidewalks, or cleaning garage floors.

Patent 758,071 issued to Thomas S. Hiles for Sidewalk-Cleaner granted April 26, 1904, discloses a sidewalk cleaner having a bifurcated ferrule B forming a holder for a "V" shaped plate C consisting of a leaf c forming a scraping edge and a second leaf c' provided with chopping points $c^2$. Which plate C is permanently riveted to the bifurcated ferrule B by a series of rivets $b^2$.

There is not included in this tool a heavy body portion, a flange having a transverse shoulder, a reversible blade, or a blade provided with vertical slots. While the tool of that patent may be used on one side as a scraper, or turned over and used as a chopping tool, it cannot, as can the tool of the patent in suit, be reversed so as to use the scraper blade c on either side to resharpen the blade.

It is true as contended by defendant that features in the art can be combined as taught by the art to anticipate an alleged invention, but it is equally true that isolated features cannot be aggregated to construct an anticipation.

The art did not teach the combination of the features of the patent in suit, nor the invention of that patent, the most that may be said is that isolated features may be found in patents of the prior art and in some cases of non-analogous art.

None of the six recited patents anticipate Claims 1 and 3 of the patent in suit nor did they teach the invention of the patent in suit.

The defendant offered in evidence four other patents, as showing the state of the art, which I will consider in the order they were granted.

Patent 141,549 issued to Charles Ellis, George W. Ellis and John D. Ellis for Improvement in Box-Scrapers granted August 5th, 1873, discloses a box-scraper which is similar in its general construction and principle of operation to Metzger's Scraping Implement, which I will next consider, and like that implement it does not disclose or suggest a weighted scraper, such as is covered by Claims 1 and 3 of the patent in suit.

Patent 462,445 issued to Edward J. Metzger for Scraping Implement granted November 3rd, 1891, discloses an implement designed for scraping meat-blocks in cleaning the same, and for other analogous purposes. Which implement as the patentee says in his specification: "Consists of a prolonged and approximately-straight shank having its rear end passing through the handle and secured thereto and terminating at the opposite end with an integral plate extending from opposite sides of the shank at right angles thereto and downward and at an obtuse angle to the shank and formed with a rabbet in its front, and the scraper-blade secured in said rabbet by screws passing through the blade and back plate. * * *"

The head of the tool of that patent is not weighted, the blade is not in alignment with the handle. That tool if made larger would resemble a farmer's hoe and its use would be impracticable for roofing work, the removal of ice from sidewalks, or cleaning garage floors.

That patent was cited as a reference in the prosecution of the application, but, the patent issued over it and that strengthens the presumption of validity.

Patent 742,981 issued to James B. Gatewood for Tobacco-Harvesting Knife granted November 3rd, 1903, discloses new and useful improvements in tobacco harvesting knives. That knife has a sharp cutting blade B which renders it impractical for a roofer's tool and likewise for removing ice from sidewalks, or cleaning garage floors. It does not disclose or suggest a weighted scraper such as is covered by Claims 1 and 3 of the patent in suit, and it is not in an analogous art.

Patent 843,818 issued to Cornelius Hooghouse for planer granted February 12th, 1907 discloses a planer adapted to be used in scraping the surface of floors and the like, and thereby doing away with the manual operation of sand papering a wooden floor. In operating the body of that planer is drawn forward over the floor surface, and not pushed away from the operator to perform the work, as is the weighted scraper of the patent in suit.

That planer is unsuited for roofing work, and for removing ice from sidewalks.

From my examination of all the patents offered to show anticipation and the state of the art, I can not find that the patent in suit lacks invention over the prior art, on the contrary, I find that the patent in suit represents a distinct advance in the art, and that in so far as the structure of the patent is used as a roofer's tool, it has virtually supplanted the spade, which was generally used by roofers before the tool of the patent in suit came on the market.

The tools of the prior art patents operate in a manner distinctly different from the teaching and claims of the patent in suit, and not only is there no anticipation, but, also, there is no such limitation as deprives the patent in suit of invention over the prior art.

It is true that none of the patents offered in evidence on this trial were cited as references in the Patent Office, with the exception of the Metzger Patent 462,445, but there were cited in the Patent Office, as references, eleven Patents as follows: Jacobs 428,395; Dyson 209,803; Cowles 275,025; Lefebure 401,442; Metzger 462,-445; Taylor 741,944; Lutz 835,160; Lobmiller 880,745; Johnson 923,271; Pettit 1,018,518; and Full 1,082,802.

These same Patents were listed in the decision of the Board of Examiners-in-Chief, and also in the decision of the Commissioner of Patents, and were before the Court of Appeals when that Court reversed the decision of the Commissioner of Patents.

These references, it seems to me, were better than the references offered by the defendant on this trial, and therefore the presumption of validity is not weakened by the prior art offered by the defendant, on this trial, although none of it, except Metzger 462,445, was cited in the Patent Office.

Claims 1 and 3 of the patent in suit are valid and infringed.

A decree may be entered in favor of the plaintiff against the defendant with injunction and costs and the usual order of reference.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the Court, as provided by the Rules of Civil Procedure, and the Rules of this Court.